```
        IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
          MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


SUE-ZANNE MANN,                  )
                                 )
      Plaintiff,                 )
                                 )     CIVIL ACTION NO.
      v.                         )       2:07cv751-MHT
                                 )           (WO)
JAMES A. DARDEN,                 )
                                 )
      Defendant.                 )
```

## OPINION

Plaintiff Sue-Zanne Mann charges defendant James A. Darden (an officer with the Prattville, Alabama Police Department) with state-law battery for tasing her twice while she was a patient in the hospital. This case is currently before the court on Mann's motion for a new trial after a jury found against her on the battery claim. For the reasons discussed below, the court holds that Mann is entitled to a new trial on the "second-tasing incident" but not on the "first-tasing incident."

I.

On August 21, 2005, Mann was brought to a Prattville hospital after she had ingested an excessive number of prescription pills.  Following an examination, hospital physicians recommended she be transferred to a psychiatric-treatment center for further evaluation.  The county probate court ordered the transfer, and Mann stayed overnight at the hospital.

The next day, after learning of her impending transfer, Mann became uncooperative and argumentative, complaining that she did not want be transferred to a psychiatric-treatment center.  Prattville Police were called to the hospital to assist the medical staff with Mann.  That afternoon, Officer Darden, along with Officer Camille Emmanuel, visited Mann's room in the intensive-care unit.  While the evidence is in dispute as to what happened after that, it is undisputed that, while Darden was at the foot of Mann's bed and Emmanuel was at the head, Darden ended up tasing Mann twice.  After the two

tasings, Mann agreed to be, and was, transferred to a psychiatric-treatment center.

As the Eleventh Circuit Court of Appeals has explained, a taser

> "was 'designed to cause significant, uncontrollable muscle contractions capable of incapacitating even the most focused and aggressive combatants.' ... The taser gun fires two probes up to a distance of twenty-one feet from a replaceable cartridge. These probes are connected to the taser gun by high-voltage insulated wire. When the probes make contact with the target, the taser gun transmits electrical pulses along the wires and into the body of the target, through up to two inches of clothing."

Oliver ex rel. Estate of Oliver v. Fiorino, ___ F.3d ___, ___, 2009 WL 3417869, at *2 (11th Cir. 2009) (citations omitted). "The pulses are five seconds in duration, unless the trigger is held down longer than five seconds." Id. "Each 5-second cycle is a 'window of opportunity' for the arrest team to apprehend the subject and go hands on." Id. (citation omitted).

The Prattville Police Department's written policy states that tasers "provide personnel with an additional use-of-force option for gaining compliance of resistant or aggressive individuals in arrest and other situations" and "are often used to stop the aggression of a suspect and prevent Officers and suspects alike from a physical confrontation and likely injury." Plaintiff's exh. 5, at 3.

However, according to Officer Darden, tasers "[c]ause intense pain." The Prattville Police Department's written policy, therefore, provides for their use as part of "[e]scalating levels of forces," with the first level being "Verbal persuasion," the second being "Minor physical force," the third being "Tasing," and so forth. Plaintiff's exh. 5, at 10. The policy further states that, "whatever the circumstances are, only the minimum amount of force necessary will be used to preserve the peace, prevent the commission of offenses, effect lawful arrests or defend persons or property." Id.

Mann's wounds from the taser's prongs became infected. Also, the prongs damaged mesh implanted in the area of Mann's abdomen from a prior surgical procedure; this mesh had to be surgically repaired as a result of the tasing incidents.

Mann filed this lawsuit charging Darden and Emmanuel with using excessive force in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, and charging Darden with state-law battery. Jurisdiction for the federal claim was proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and for the state-law claim under 28 U.S.C. § 1367 (supplemental). The court entered summary judgment in favor of Darden and Emmanuel on all claims except Mann's battery claim against Darden. <u>Mann v. Darden</u>, 630 F. Supp.2d 1305, 1308 (M.D. Ala. 2009) (Thompson, J.). The battery claim went to trial, with

the jury finding in favor of Darden based on "discretionary function" immunity.

This lawsuit is now before the court again, this time on Mann's motion for a new trial on the state-law battery claim against Darden.

## II.

Fed. R. Civ. P. 59(a)(1)(A) declares that, "The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows: after a jury trial, for any reason for which a new trial has heretofore before been granted in an action at law in federal court." A court may grant a new trial if it finds that the jury's verdict was "contrary to the great, not merely the greater weight of the evidence," Watts v. Great Atlantic and Pacific Tea Co., 842 F.2d 307, 310 (11th Cir. 1988), or if the verdict will result in a miscarriage of justice. Hewitt v. B.F. Goodrich, Co., 732 F.2d 1554, 1556 (11th Cir. 1984). "When there is

some support for a jury's verdict, it is irrelevant what ... the district judge would have concluded." Redd v. City of Phenix City, 934 F.2d 1211, 1215 (11th Cir. 1991).

### III.

Mann argues in her motion for a new trial that, in spite of the jury's finding to the contrary, Darden was not engaged in a "discretionary function" as a police officer when he tased her.  At trial, because Darden had tased Mann twice, the parties and the court agreed to divide Darden's tasing of Mann into the "first-tasing incident" and the "second-tasing incident."  The court then gave the jury the following mutually agreed-upon instruction for each tasing with regard to discretionary-function immunity:

> "As to each incident, Darden could be immune from suit for battery under Alabama law if he proves by a preponderance of the evidence that he was engaged in a 'discretionary function' as a police officer.

7

> "As a matter of law, if Darden had arguable 'probable cause' to seize Mann, then he was engaged in a 'discretionary function' (and will be entitled to immunity). 'Probable cause' means that the circumstances existed such that a reasonable police officer would have concluded that Mann violated the law or was an imminent danger to another person. 'Arguable' means that reasonable officers in the same circumstances could reasonably disagree about the existence of probable cause.
>
> "However, if a reasonable police officer, even though he may have had arguable probable cause, would have known that the physical force used against Mann, considering all of the circumstances, was excessive, then Darden was not acting in a 'discretionary function' (and will not be entitled to immunity). Under Alabama law, a police officer can be privileged to use force in making a lawful seizure, but a police officer may not use a greater force than necessary to effect the seizure.
>
> "If Darden proves that he was engaged in a 'discretionary function,' he nonetheless is not entitled to immunity if Mann proves by a preponderance of the evidence that his conduct was willful, malicious, fraudulent, in bad faith, beyond his authority, or under a mistaken interpretation of the law."

Furthermore, using an agreed-upon verdict form, the jury responded, for each tasing incident separately, to the following question: "Do you find that defendant James A. Darden is entitled discretionary function immunity?"

The jury answered in the affirmative, finding that Officer Darden was entitled to discretionary-function immunity for both the first- and second-tasing incident. To reach this verdict based on the above jury instruction, the jury was required to find that, prior to each tasing incident, Mann had arguable probable cause to seize Mann, that is, Mann arguably "violated the law or was an imminent danger to another person." If Darden did not have probable cause to seize Mann before either of the two tasing incidents, then he was not entitled to discretionary-function immunity for that tasing. Furthermore, even if Darden had probable cause to seize Mann, he would still not be entitled to discretionary-function immunity if his tasing of Mann (as opposed to,

9

for example, restraining her by use of his hands) constituted "excessive force" or was "willful, malicious, fraudulent, in bad faith, beyond his authority, or under a mistaken interpretation of the law."

<u>First-Tasing Incident</u>:  The jury found that Darden was entitled to discretionary-function immunity for the first-tasing incident. This verdict is supported by evidence presented at trial: that Officers Emmanuel and Darden were summoned to the hospital to assist the staff in preparing Mann for her transfer to a psychiatric-treatment center; that, upon their arrival, Mann was sitting on the side of her bed, complaining loudly that she did not want to be transferred; that she refused to comply with the officers' directives to calm down and remain seated on her bed; that Darden, who was at the foot of Mann's bed with Emmanuel at the head, warned Mann that, unless she complied with his directives, he would tase her; that, following this warning, Mann "reached" towards Emmanuel in a "threatening" manner, though she did not say anything threatening; and that Darden then

10

tased Mann because he was concerned for Emmanuel's safety. The jury, therefore, apparently found that Darden had arguable probable cause to seize Mann because he believed that she "was an imminent danger to another person." See Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) ("The single use of the taser gun may well have prevented a physical struggle and serious harm....").

The evidence was also sufficient for the jury to conclude that, in choosing to tase Mann in response to her threatening gesture toward Emmauel, Darden did not use "excessive force" and that his conduct was not "willful, malicious, fraudulent, in bad faith, beyond his authority, or under a mistaken interpretation of the law." Mann presented no evidence to counter Darden's testimony that his use of a taser, rather than his hands, to restrain Mann was in line with local written policy as well as overall proper police practices. Mann is not entitled to a new trial as to the first-tasing incident.

<u>Second-Tasing Incident</u>:  The jury found, as with the first-tasing incident, that Officer Darden was entitled to discretionary-function immunity for the second tasing.  The jury's verdict as to the second-tasing incident is against the clear great weight of the evidence.

After Darden had tased Mann the first time, Mann tugged at the barbed-electrical prongs that had lodged into her abdomen.  Darden warned Mann not to remove them, but she continued to pull at the prongs, and Darden tased her a second time.  Mann then agreed to be, and was transferred, to a psychiatric-treatment center.  Darden asserts that he tased Mann a second time to protect her.

As with the first-tasing incident, Darden was required to have had arguable probable cause to seize Mann a second time, that is, arguable probable cause to believe that Mann had "violated the law or was an imminent danger to another person."  Because Darden does not contend that Mann had violated the law, the only issue is whether he had arguable probable cause to

12

believe that she "was an imminent danger to another person."

Darden argues that the phrase "another person" includes Mann herself. This argument is without merit. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979). The ordinary, contemporary, and common meaning of the word "another" is "One other than oneself." Webster's Third International Dictionary 89 (2002). Therefore, the phrase "another person" in the court's instruction meant someone other than Mann. Because, as Darden concedes, Mann was not an imminent danger to any person other than herself, he lacked probable cause to seize her a second time.

Moreover, even if Darden had arguable probable cause to seize Mann a second time, the evidence does not support the conclusion that his use of a taser was reasonable force. The Prattville Police Department's X-

13

26 Taser User Manual requires that, if a taser probe penetrates the skin, the officer must transport the person tased to the emergency room for hospital staff to remove the probe. Plaintiff's exh. 5, at 3. Mann and Darden were in the intensive-care unit of a hospital and thus were literally surrounded by competent medical personnel capable of safely and swiftly removing the probes from Mann. Because Darden had already tased Mann once, she was no longer a physical threat, and Darden (who was at the foot of Mann's bed) and Emmanuel (who was at the head) need only have "gone hands on" with this "window of opportunity," Oliver, ___ F.3d at ____, 2009 WL 3417869, at *2 (citations omitted), and used their hands to restrain Mann while they called for medical help. Darden's decision to tase Mann a second time, therefore, appears to the court "so utterly disproportionate to the level of force reasonably necessary that any reasonable officer would have recognized that his actions were unlawful." Id. at ____, 2009 WL 3417869, at *7.

14

Because Darden lacked arguable probable cause to seize Mann a second time and because, in any event, his use of a taser constituted excessive force, the court need not determine whether his conduct was "willful, malicious, fraudulent, in bad faith, beyond his authority, or under a mistaken interpretation of the law."

Therefore, based on the court's instructions as to the law and the evidence presented at trial, Darden was not entitled to discretionary-function immunity for the second tasing. Mann is entitled to a new trial as to the second-tasing incident.

* * *

In conclusion, the court holds that Mann is entitled to a new trial on the second-tasing incident but not on the first tasing. However, the court adds that its holding with regard to the first tasing is quite close. If the court were the factfinder it would find in its <u>lay opinion</u> that, while the evidence supports the conclusion that Darden thought Mann was

15

"reaching" for Emmanuel in a "threatening" manner and thus had arguable probable cause to seize her, there was no reason why, in effecting the seizure, he and Emmanuel could not have used their hands to restrain Mann. After all, Mann was "reaching" from her hospital bed, with Darden at the foot and Emmanuel at the head. Nevertheless, because the court is not an expert on police practices and because Mann presented no evidence to counter Darden's essentially <u>expert view</u> that his use of a taser was in line with local written policy as well as overall proper police practices, the court must conclude that a new trial is not warranted as to the first tasing. Therefore, in denying a new trial as to the first tasing, the court is not saying that it believes Darden initially properly tased Mann but rather that there was no evidence to justify a new trial.

That said, the court hopes that, in the future, Darden and other Prattville Police Officers will use their hands, rather than tasers, in restraining hospital patients who are disruptive or who are, at most,

16

gesturing in a threatening manner from their beds--especially where the impetus for the patients' action is an unwillingness to accept treatment, be it mental-health treatment (as in Mann's case) or treatment in general.  The court believes that these officers would not any more want their hospital-bound loved ones (unaccused of any crime and in bed) tased than they would want them cattle prodded in such circumstances. If there is one place where a taser should not be used, absent some evidence of a reasonable likelihood or probability of a serious and substantial physical threat, it is in a hospital against its patients. Otherwise, if we are so fortunate as to live into old age but, unfortunately, have succumbed to the mental ravages of one of the various forms of dementia, we could very well find ourselves at the receiving end of an "intensely painful," incapacitating taser gun rather than in the restraining embrace of caring arms and hands of hospital staff and others called upon to act in their behalf.

An appropriate order will be entered.

DONE, this the 23rd day of November, 2009.

                                <u>/s/ Myron H. Thompson</u>
                                UNITED STATES DISTRICT JUDGE